UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

**DECISION AND ORDER**
9-CR-331-A

MIGUEL MOSCOSO,

Defendant.

Defendant Miguel Moscoso has filed a *pro se* motion (Dkt. No. 2493) for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. The Government filed a response in opposition (Dkt. No. 2513), and Defendant elected to not file a reply. Also pending before the Court is Defendant's *pro se* motion (Dkt. No. 2221) for an extension of time to file a notice of appeal. For the following reasons, Defendant's motion for compassionate release is DENIED, but Defendant's motion for an extension of time to file a notice of appeal is GRANTED.

## COMPASSIONATE RELEASE MOTION

### I. Background

On March 26, 2014, Defendant pleaded guilty (Dkt. No. 1306) to Count 1 of the Fourth Superseding Indictment, charging him with a violation of 18 U.S.C. §§ 1962(d) and 1963 (RICO conspiracy). Defendant admitted that between 2008 and

September 2010, he was a member/associate of the 10th Street Gang operating on the West Side of the City of Buffalo, New York. He also admitted to his knowledge that other members of the 10th Street Gang sold quantities of cocaine, crack cocaine, heroin, and marijuana; that he personally possessed firearms and knew that other 10th Street Gang members possessed firearms; and that he sold marijuana in the territory generally controlled by the 10th Street Gang. The parties agreed that Defendant's relevant conduct was the equivalent of at least 20 kilograms but less than 40 kilograms of marijuana.

Defendant also admitted that as a part of this violent gang, he shot and murdered a rival gang member and several weeks later participated in the non-fatal shooting of another rival gang member. With respect to these violent acts, the factual basis section of Defendant's plea agreement reads as follows:

> On or about June 12, 2009, into the early morning hours of June 13, 2009, the defendant was with Angel Laboy, and other individuals who were armed with firearms while they were walking around in the neighborhood controlled by the 10th Street Gang. The defendant, Angel Laboy, and others learned that 7th Street Gang member Christian Portes might be at a party on Whitney Place in Buffalo. The defendant and others decided to go see who was at the party, and talked specifically about killing Christian Portes. Once they walked to the vicinity of the party house on Whitney Place, they spotted Christian Portes riding his bike on Whitney. The defendant told Angel Laboy to give him the gun Laboy possessed, and quickly proceeded down Whitney towards Maryland in the direction that Christian Portes was riding his bike. At the same time, Angel Laboy and his brother proceeded through a cut-through in the fence dividing 10th Street and Whitney in an effort to cut Christian Portes off in the event he made it around the block.

> When the defendant arrived at the corner of Whitney and Maryland, the defendant fired at Portes with a .38 caliber revolver, and the bullet struck Portes above the right eye and exited out of his head. The defendant immediately ran back to Angel Laboy's residence, located at 168 West Avenue. At that location, the defendant and Angel Laboy hid the murder weapon, which they subsequently gave to another 10th [S]treet Gang member, who helped them sell the murder weapon. The medical examiner, Dr. Diane Vertes, …conducted the post-mortem examination of Christian Portes and concluded that he died from a gunshot wound to the head. The defendant admits to this conduct.
>
> On or about July 2, 2009, in the territory of the 10th Street Gang in Buffalo, the defendant rode his bicycle with Angel Laboy on the pegs. While riding the bike, the defendant and Laboy saw 7th Street Gang member Emmanuel Lopez driving an automobile. The defendant knew Laboy was armed and he rode his bike after the vehicle Emmanuel Lopez was driving so Laboy could shoot at Lopez. Laboy jumped off the bike and shot Emmanuel Lopez causing a serious injury to Lopez.[1] The defendant admits to this conduct.

Dkt. No. 1306, ¶ 5(g)-(h).

At Defendant's sentencing on November 7, 2014, this Court calculated a Criminal History Category of I and a Total Offense Level of 40, which resulted in an advisory range under the United States Sentencing Guidelines ("U.S.S.G" or "Guidelines") of 292 to 365 months, as calculated in the written plea agreement. The statutory maximum term of imprisonment was life. The Court sentenced

[1] Lopez was shot in the face. *See* Dkt. No. 2426 (revised presentence investigation report [PSR]), ¶ 36 ("One (1) of the shots [fired by Laboy] grazed victim Emmanual Lopez in the face causing serious injury.").

Defendant to 360 months, near the high-end of the Guidelines range. Dkt. No. 1634 (Judgment); *see* Dkt. No. 1855 (Sentencing Tr.).

On April 7, 2025, Defendant filed the instant compassionate release motion. Defendant is 35 years old and currently incarcerated at Federal Correctional Institution ("FCI") Loretto, with a projected release date of July 5, 2035.[2]

## II. <u>Discussion</u>

"The First Step Act's 'compassionate release' provision, 18 U.S.C. § 3582(c)(1)(A), provides an exception to the general rule that a court may not modify a term of imprisonment after it has been imposed." *United States v. Luke*, No. 14-CR-06089-FPG, 2024 U.S. Dist. LEXIS 72005, *3 (W.D.N.Y. Apr. 19, 2024) (internal citation omitted), *aff'd*, 24-1141, 2025 U.S. App. LEXIS 5477 (2d Cir. 2025) (summary order). Under this provision, a court may reduce the term of imprisonment if, "after considering the factors set forth in section 3553(a)," it finds that "extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i) (alterations omitted); *see United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam). It is a defendant's burden to show he or she is entitled to a sentence reduction under § 18 U.S.C. 3582(c)(1)(A). *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021) (per curiam).

---

[2] *See Inmate Locator: Register Number 20363-055*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 20, 2026).

**a. *Exhaustion of Administrative Remedies***

The Government concedes that the instant motion is properly before this Court because Defendant waited for "the lapse of 30 days from the receipt of [his request for compassionate release] by the warden of the defendant's facility" before he filed his motion. *Keitt*, 21 F.4th at 73; 18 U.S.C. § 3582(c)(1)(A); *see* Dkt. No. 2493, p. 41 (Defendant's request to warden at FCI Bennettsville, where Defendant was previously housed, dated September 6, 2024); Dkt. No. 2493, p. 60 (denial of request from warden of FCI Bennettsville, dated September 23, 2024).

**b. *Extraordinary and Compelling Circumstances***

A defendant "must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that…a sentence reduction…would not simply constitute second-guessing of the sentence previously imposed." *Keitt*, 21 F.4th at 71. Congress expressly delegated authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Guideline § 1B1.13(b) sets forth the Sentencing Commission's policy statements regarding "extraordinary and compelling reasons." It was amended effective November 1, 2023, "modifying and expanding the categories of circumstances that qualify as 'extraordinary and compelling reasons' warranting a sentence reduction." *United States v. Sierra*, 10 Cr. 416 (VM), 2024 U.S. Dist. LEXIS 78023, *2 (S.D.N.Y. Apr. 26, 2024) (citing U.S.S.G. § 1B1.13).

It is "well-settled that courts must construe *pro se* submissions liberally to raise the strongest arguments that they suggest[.]" *United States v. Scott*, 04-CR-

6102 (CJS), 2024 U.S. Dist. LEXIS 95387, *18 (W.D.N.Y. May 28, 2024). The reasons for a reduction raised by Defendant's filings include Guideline sections 1B1.13(b)(6) ("Unusually Long Sentence"), 1B1.13(b)(5) ("Other Reasons"), and 1B1.13(d) ("Rehabilitation of the Defendant"). Defendant also cites section 1B1.13(b)(1)(C) ("Medical Circumstances") in his conditions-of-confinement/ COVID-19 pandemic-related argument.

Defendant first argues that Guideline § 1B1.13(b)(6) applies, which authorizes compassionate release if (1) a defendant "received an unusually long sentence"; (2) a defendant has "served at least 10 years of imprisonment"; (3) "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive)…would produce a gross disparity between the sentence being served and the sentence likely to be imposed" when the § 3582(c)(1)(A) motion is filed; and (4) the Court has fully considered a defendant's "individualized circumstances." In other words, "[s]ection 1B1.13(b)(6) applies to situations in which a change in the law between the time a defendant was sentenced and the time a defendant files a compassionate release motion (i.e., a post sentencing change in the law) would have resulted in a reduced term of imprisonment." *United States v. Fiumano*, 14-CR-518-02 (CM), 2025 U.S. Dist. LEXIS 192974, *8 (S.D.N.Y. Sept. 29, 2025), citing U.S.S.G. § 1B1.13(b)(6).

However, in light of *Rutherford*, a Supreme Court decision issued in late May 2026, the Court can no longer consider any non-retroactive change-of-law as an extraordinary and compelling ground for relief under § 3582(c)(1)(A). *See Rutherford v. United States*, 146 S. Ct. 1320, 1330 (2026) ("When Congress

declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an 'extraordinary and compelling reaso[n]' that 'warrant[s]' a sentence reduction…Insofar as the Commission's amended policy statement maintains otherwise, it conflicts with [18 U.S.C. § 3582(c)(1)(A)(i)]."). Even if section 1B1.13(b)(6) remained valid, although Defendant has served over 10 years of imprisonment, he does not actually point to any change in the law—retroactive or not—that would impact his sentence, and the Government represents that it is "unaware" of any such change in the law (Dkt. No. 2513, p. 8).

Liberally construing Defendant's motion, he also essentially asserts that early release is warranted due to a combination of circumstances that do not fall under paragraphs (1) through (4) of section 1B1.13(b), but that he posits are equally as compelling such that section 1B1.13(b)(5) (the "catch-all" category") applies: his sentence is disproportionately high compared to sentences imposed on other defendants convicted of murder, and he was young at the time of the offense and he had a difficult upbringing. He also argues that his rehabilitation supports his motion.

First, Defendant argues that his 360-month (30-year) sentence is significantly disparate from sentences imposed on similarly situated defendants.[3] He points to statistics cited in this Circuit and by the U.S. Sentencing Commission indicating median and/or average sentences for murder of anywhere from approximately 18 to

---

[3] One of the sentencing factors is 18 U.S.C. § 3553(a)(6): district courts are required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

24 years. Defendant notes that when his motion was filed, he had served over 15 years' imprisonment, which was "very close to the national average sentence" for murder. Dkt. No. 2493, p. 15.

The Second Circuit has not "foreclose[d] the possibility that significant sentencing disparities…might, in some unusual circumstances, warrant a finding of 'extraordinary and compelling' reasons to grant a sentence reduction." *United States v. Fernandez*, 104 F.4th 420, 429 n.4 (2d Cir. 2024) (declining to resolve "whether a sentencing disparity claim categorically amounts to a challenge of the validity of a sentence, [which] must therefore always be brought on direct or collateral review, and is therefore always barred on a motion for compassionate release"), *aff'd*, *Fernandez v. United States*, 146 S. Ct. 1292 (2026).

This is not the "unusual" case where a disparity favors early release, however. Indeed, nothing indicates to this Court that Defendant's sentence created a sentencing disparity. As outlined above, Defendant was sentenced at the high-end of the calculated Guidelines range, and squarely within the range the parties calculated in their plea agreement. His sentence accounted for not only the brutal murder of Portes and Defendant's participation in the shooting of Lopez, but also his other illegal activities he engaged in as part of the racketeering conspiracy. Additionally, while Defendant's sentence is higher than those in the above-referenced statistics, "the Court finds [these] data point[s] regarding the average length of a murder sentence almost meaningless: [they] do[ ] not reflect the many factors that affect the length of a sentence[.]" *United States v. Pappa*, 97-CR-1005 (PKC), 2025 U.S. Dist. LEXIS 103322, *35-36 (E.D.N.Y. May 30, 2025).

Second, in a related fashion, Defendant argues a reduced sentence is warranted because he was only a teenager at the time he committed the instant offense, and his actions are demonstrative of his "lack of maturity and undeveloped sense of responsibility" given his young age at the time. He asks that this Court consider his age and "terrible upbringing" (a childhood that he argues was fraught with drug abuse, neglect, and a lack of parental supervision), suggesting that the Court did not adequately consider these factors when sentencing him. Liberally interpreting Defendant's arguments, he further asserts that by sentencing him in 2014, this Court did not fully consider (as it could not have) all the scientific information and research now available about brain development and its impact on decision-making into an individual's 20's.

At sentencing, however, the Court was well-aware of Defendant's age at the time of the offense, as well as defense counsel's argument that Defendant's age contributed to his criminal conduct. *See* Dkt. No. 1427 (in Defendant's written sentencing submission, defense counsel arguing Defendant's prefrontal cortex was not fully developed at the time he killed Portes and attaching excerpts/abstracts from published articles on adolescence and brain development); Dkt. No. 1855 (Sentencing Tr.), pp. 13 (this Court commenting on Defendant's age of 18 years, and his killing of 14-year-old Portes), 16-23 (defense counsel arguing youth as a mitigating factor).

This Court stated that it "very, very carefully" considered the 18 U.S.C. § 3553(a) factors when imposing a sentence towards the high-end of the Guidelines range. Dkt. No. 1855, p. 30. This consideration necessarily included contemplation

of Defendant's age at the time of the offense. *See* 18 U.S.C. § 3553(a)(1) (a sentencing court "shall consider" the "history and characteristics of the defendant"). Defendant's disagreement with how this Court balanced the § 3553(a) factors does not equate with an extraordinary or compelling reason to reduce his sentence.

Defendant also references revisions made to Guideline § 5H1.1 ("Age (Policy Statement)"), which took effect pursuant to Amendment 829 on November 1, 2024, after his motion was fully submitted. Revised U.S.S.G. § 5H1.1 provided that "a downward departure…may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses." This policy statement set forth "[c]ertain risk factors" that "may affect a youthful individual's development into the mid-20's and contribute to involvement in the criminal justice system," including "environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships." U.S.S.G. § 5H1.1.

Defendant's reliance on this policy statement is misplaced, however. "Amendment 829…does not apply retroactively"; as such, it does not apply to Defendant, who was sentenced before it went into effect. *United States v. Henoa*, 96-CR-355 (ARR), 2024 U.S. Dist. LEXIS 30739, *5-6 (E.D.N.Y. Feb. 22, 2024) (collecting cases); *see* U.S.S.G. § 1B1.13(c) (stating that any amendment to the Sentencing Guidelines that has not been made retroactive "shall not be considered for purposes of determining whether an extraordinary and compelling reason exists"). "Furthermore, on November 1, 2025, Section 5H1.1 - the age-related policy statement modified by Amendment 829 - was deleted by subsequent Amendment

836." *Henoa*, 2024 U.S. Dist. LEXIS 30739, at *6; *see United States v. Jones*, 4:21 CR 261 CDP, 2026 U.S. Dist. LEXIS 26171, *3 (E.D. Mo. Feb. 9, 2026).

In any event, despite lacking today's most updated research on adolescent development, this Court nevertheless considered and factored in Defendant's age and upbringing when arriving at a just sentence. *See United States v. Johnson*, Case No. 11-CR-405 (FB), 2026 U.S. Dist. LEXIS 106170, *5-6 (E.D.N.Y. May 13, 2026) (internal citation omitted) ("Although research and statistics may subsequently evolve, a defendant's age and childhood circumstances are invariably considered at the time of the original sentencing."). Moreover, even assuming as Defendant claims that his childhood was "terrible," that he abused drugs and alcohol "frequently" since the age of 14, and that he had no supervision,[4] the Court concludes these troubling circumstances are neither exceptional nor unique enough to warrant early release.

Third, Defendant argues that harsh conditions of confinement in BOP facilities, as well as the BOP's purported failure to perform diagnostic testing and treat him for long-term effects from his prior COVID-19 infection, warrant a sentence

---

[4] Defendant's assertions appear to somewhat contradict Defendant's portrayal of his childhood in his interview with the U.S. Probation Office and in a letter he wrote in 2022. Defendant conveyed to Probation that despite his father's physical and emotional absence during the majority of his childhood and his mother's physical absence due to extensive work hours necessitated by single parenthood, his mother and grandparents were "excellent caregivers," his childhood was "uneventful," and his grandfather served as a positive male figure in his life. Dkt. No. 2426, ¶¶ 95, 97. Defendant's grandmother submitted a letter in support of the instant motion stating she "raised" Defendant "like a son," and while their lives were not easy due to financial constraints, "we always found a way." Dkt. No. 2493, p. 62. Additionally, in a letter dated May 12, 2022, which Defendant represents he wrote to Portes's sister, he stated, "I wasnt [sic] a troubled kid. I didnt [sic] have problems at home[.]" Dkt. No. 2493, pp. 67-68.

reduction. Regarding the conditions of confinement, Defendant "fails to allege any unique conditions that only he suffered," and instead "cites to general circumstances experienced by all inmates, which do not in and of themselves constitute extraordinary and compelling circumstances warranting relief." *United States v. Elder*, 17-CR-05-A, 2025 U.S. Dist. LEXIS 26410, *37 (W.D.N.Y. Feb. 13, 2025) (collecting cases). With respect to Defendant's "long COVID" argument, Defendant posits that he has experienced lingering physical effects—a racing heart and body pain requiring him to "significantly reduce his exercise routine as he [now] tires easily"—that he attributes to his previous COVID-19 infection. Defendant also complains that the BOP has failed to perform diagnostic testing to see whether his infection "caused any organ damage that may increase the risk of long[-]term health issues." Dkt. No. 2493, p. 18. The Court concludes that Defendant has not shown that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death," U.S.S.G. § 1B1.13(b)(1)(C). Rather, Defendant's medical issues are speculative and unsupported by any documentation.

Lastly, Defendant argues that his "remarkable" rehabilitation in BOP custody weighs in favor of a reduced sentence. It is apparent that Defendant has made sustained efforts to rehabilitate himself through the completion of educational programming (*see* Dkt. No. 2493, pp. 33-40, 42) and by maintaining full-time employment as a barber in the BOP (*see* Dkt. No. 2493, pp. 42, 46). Defendant has also submitted strong letters of support from family members (Dkt. No. 2493, pp. 47-

57, 62), and he has written a letter to the Court (Dkt. No. 2493, pp. 63-65) expressing his remorse and self-reflection and asserting he is a changed man.

Defendant also attaches to his motion what he asserts is an unsolicited letter from Portes's sister stating she has forgiven him, along with his response thereto (Dkt. No. 2493, pp. 66-68). In his response, dated May 12, 2022, Defendant insists that, contrary to the factual basis section of the plea agreement, he did not intend to kill Portes. Rather, Defendant states that he meant to merely shoot in Portes's general direction to scare/distract him—and that Defendant was "basically forced" into taking a plea agreement that stated otherwise. Viewed in isolation, these assertions run counter to Defendant's claims that he has rehabilitated himself. However, considering that the letter was written over 4 years ago, the Court will assume for the sake of argument that Defendant is now remorseful for his crimes of conviction.

Although Defendant has provided evidence of his rehabilitation efforts, rehabilitation is "not, *by itself*, an extraordinary and compelling reason" for a sentence reduction. U.S.S.G. § 1B1.13(d) (emphasis added), citing 28 U.S.C. § 994(t). Rather, it may only be "considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). Having found Defendant's other circumstances are not extraordinary or compelling, the Court concludes he has not met his burden of establishing such circumstances.

### c. *18 U.S.C. § 3553(a) Factors*

Even if Defendant had demonstrated an extraordinary and compelling reason for a sentence reduction, the Court would nonetheless conclude that a reduction is unwarranted upon its assessment of the 18 U.S.C. § 3553(a) factors. The Court thoroughly considered these factors at sentencing in arriving at a high-end Guidelines sentence of 360 months. At sentencing, the Court stated:

> …certainly, the Court finds it very difficult to ignore the fact that this was nothing more than a cold-blooded murder. Your client was 18 years old; a 14-year-old boy. I'm not saying that 14-year-old boy was an angel, but certainly, to kill someone, take a life so purposely as was done here, the Court cannot ignore that either.
>
> It's just too hard for me to find anything other than a fair and just sentence within the…guideline range. Believe me, I considered a sentence…at the maximum. I factored that in. I believe there may be remorse today. I don't believe there was remorse at the time it happened. No way can this Court ever, ever excuse what has happened here today…Under all the circumstances here factoring every possibility here, this Court feels that it's a reasonable and fair sentence.

Dkt. No. 1855, pp. 30-31.

A sentence of 360 months of imprisonment remains sufficient but not greater than necessary to fulfill the purposes of sentencing. Even if there were extraordinary and compelling circumstances, the § 3553(a) factors (even accounting for Defendant's progress in custody) would, at this time, significantly outweigh them.

**MOTION FOR AN EXTENSION OF TIME TO FILE A NOTICE OF APPEAL**

In the course of deciding Defendant's *pro se* motion for compassionate release, the Court became aware that a separate motion remained outstanding: Defendant's motion (Dkt. No. 2221) for an extension of time to file a notice of appeal pursuant to this Court's Text Order at Docket Number 1913.[5]

The Court's Text Order (Dkt. No. 1913): (1) granted Defendant's motion to vacate (Dkt. No. 1846) this Court's Judgment (Dkt. No. 1634) pursuant to 28 U.S.C. § 2255, "for the limited purpose of allowing Defendant timely to appeal"; and (2) reinstated the Court's Judgment (in effect, entering a new judgment) from which Defendant could take a timely appeal if he chose to do so. The Court noted that the Government was unopposed to this course of action. The Government had indicated it did "not object" to this relief in its response (Dkt. No. 1881) to Defendant's § 2255 motion,[6] without conceding whether Defendant's factual allegations underlying his claims of ineffective assistance were true and setting forth its position that Defendant's claim that the Government violated the plea agreement and that such violation resulted in a higher sentence was without merit. The Text

---

[5] On the second page of his compassionate release motion, Defendant indicated that such issue was outstanding.

[6] Both parties cited *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006). *Campusano* held that when a defendant requests that his attorney file a notice of appeal, even after a defendant waived his right to appeal in his plea agreement, "a lawyer who believes the requested appeal would be frivolous is bound to file the notice of appeal and submit a brief pursuant to *Anders v. California*, 386 U.S. 738[.]" *Id.* at 771-72. When counsel fails to do this, the Circuit will "presume prejudice" and the defendant "will be entitled to a direct appeal without any showing on collateral review that his appeal will likely have merit." *Id.* at 772.

Order also stated: "Defendant's trial counsel is requested to notify defendant of the terms of this Text Order." The Court's Text Order did not, however, indicate that a copy of the Text Order was sent to Defendant, or provide a deadline from the date the Text Order was entered by which he could file a notice of appeal.

As the Court gathers from Defendant's subsequent filings (*see* Dkt. Nos. 2197, 2221), Defendant did not receive notice of the Court's Text Order at Docket Number 1913 until over two years after that Text Order was docketed, when the Deputy Clerk of the Court copied that docket entry for him in a letter (*see* Dkt. No. 2221, pp. 7-8) responding to Defendant's request for a status update.

Without commenting on the merits of Defendant's claims or the likelihood of his success on appeal, the Court hereby grants his motion for an extension of time for Defendant to file his notice of appeal, within the specific parameters as set forth below.

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release (Dkt. No. 2493) is DENIED, and Defendant's motion (Dkt. No. 2221) for an extension of time to file a notice of appeal is GRANTED. **It is hereby ordered that Defendant has sixty (60) days from the date of this Decision and Order to file his Notice of Appeal as to the Court's vacated and reinstated November 12, 2014, Judgment.** A copy of this Decision and Order shall be mailed to Miguel Moscoso, 20363-055, LORETTO FEDERAL CORRECTIONAL INSTITUTION, Inmate Mail/Parcels P.O. BOX 1000, CRESSON, PA 16630.

**IT IS SO ORDERED.**

__*s/Richard J. Arcara*________
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: October 20, 2026
Buffalo, New York